UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM TRIMBLE, III,

      Plaintiff,                     Civil Action No. 11-12932

v.                                 HON. R.  STEVEN WHALEN
                                 U.S. Magistrate Judge

WARREN POLICE OFFICER PARISEK

      Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On June 15, 2011, Plaintiff William Trimble, III, filed a civil rights complaint under 42 U.S.C. § 1983, alleging excessive force in violation of the Fourth Amendment. He also brings state law claims of assault and battery and false arrest.  Before the Court is Defendant Warren Police Officer Parisek's Motion for Summary Judgment [Doc. #20]. For the reasons discussed below, the motion is GRANTED as to the false arrest claim, and DENIED as to the Fourth Amendment claim of excessive force and the state law claim of assault and battery.

### I.  FACTS

#### A.  Uncontested Facts

On October 24, 2010, neighbors of Plaintiff William Trimble III called police after hearing gunshots and witnessing fighting.  *Deposition of Sarah Twitchell*, Defendant's Exhibit D at 8.  Plaintiff had plans to go out with friends and his girlfriend, Letesha Stewart.  *Deposition of William Trimble*, Plaintiff's Exhibit 1 at 31.  Soon after Stewart arrived, the couple began fighting.  *Id*. at 31.  Witness accounts vary regarding whether

-1-

the fight was physical. *Id*. at 30-31. *See also* Plaintiff's Exhibit 5 at 28, Defendant's

Exhibit E at 4. Plaintiff became upset, went to his front porch and discharged his firearm

into the air. *Plaintiff's Deposition*, Plaintiff's Exhibit 1 at 31.  After that, he left the scene.

*Id*. Defendant Parisek found Plaintiff on a neighbor's back porch a few minutes later.

Parisek ordered Plaintiff to "freeze" and placed him in handcuffs. *Deposition of Michael

Parisek*, Defendant's Exhibit A, 9, 14-15.

After the discarded firearm was located, Plaintiff was taken to the police station,

booked and charged with reckless use of a firearm, brandishing a firearm in public, and

domestic violence.  *Id*. at 13-14; *see also Warren Police Department Incident Report*,

Defendant's Exhibit E-2. Family members later posted bail, possibly the next day.

*Plaintiff's Deposition*, at 50.

On November 11, 2010, Plaintiff sought medical treatment at William Beaumont

Hospital in Royal Oak, Michigan  for an injury to his wrist.  Attending physician Dr.

Marion F. Hoelzer, M.D., found that Plaintiff had a closed fracture of the metacarpal bone

as well as swelling.  *Beaumont Hospital Records*, Defendant's Exhibit I at 3.  Plaintiff's

hand was placed in a splint with discharge instructions to follow up within one week.  *Id*.

at 4.  Treating notes indicate that Plaintiff sought treatment after claiming an injury to his

hand during an arrest on October 24, 2010. *Id*. at 9.  Imaging studies showed a spiral

fracture through the mid diaphysis of the third metacarpal of the right hand with ulnar

displacement and volar and radial angulation. *Id*. at 11.  He was given Vicodin for pain

control and discharged that same day.  *Id*. at 4, 7.

Plaintiff returned to Beaumont Hospital on November 16, 2010.  Plaintiff's Exhibit

3.  Plaintiff's hand was placed in a cast and he was given Tylenol with Codeine for pain

relief. *Id*.

Plaintiff eventually pled guilty to brandishing a firearm and pled no contest to domestic violence, in exchange for the dismissal of the reckless use of a firearm charge (Exhibit G at 56-57).

The parties' descriptions of the circumstances of the arrest and booking differ greatly.

### B.    Defendant Parisek's Version

Witnesses at the scene informed officers that Plaintiff was the shooter and had fled the scene on foot. *Parisek Deposition* at 10-11.  Defendant Parisek heard the sound of a chain-link fence rattling, which he assumed was someone jumping fences. *Id*.  He located Plaintiff, out of breath with an empty holster on his belt, in a neighbor's backyard. *Id*. at 10-13.  Parisek drew his weapon, ordered Plaintiff to the ground, handcuffed Plaintiff and assisted him to his feet without incident (Exhibit G at 41).  Plaintiff then admitted to Parisek that he shot his registered firearm during an argument with his girlfriend. *Plaintiff's Deposition,* Defendant's Exhibit G, at 30-33.

Another officer told Defendant that the other officers were unable to locate Plaintiff's firearm.  *Parisek Deposition*, 13-14.  Parisek then asked Plaintiff where the gun was, but Plaintiff did not answer. *Plaintiff's Deposition,* Defendant's Exhibit G, at 40, 42-43.  Defendant placed Plaintiff on the ground on one knee, and then Plaintiff revealed the location of the gun.  *Parisek Deposition* at 13-14, 16-17, 24-25.  Defendant maintains that Plaintiff never complained of any injury. *Id*. at 22-23.

### C.    Plaintiff's Version

After Plaintiff discharged his firearm into the air, he removed himself from the situation to regain his composure. *Plaintiff's Deposition*, Plaintiff's Exhibit 1, at 32.  He went to a neighbor's backyard, sat down on the porch, and called his brother to talk about

what happened.  *Id*. at 36-39.  Several minutes later, Parisek arrived in the backyard, and directed Plaintiff to freeze and get on the ground, which he did.  *Id*. at 37-39.  After searching Plaintiff, Parisek escorted him back to his own front yard.  *Id*. at 41.

Plaintiff testified that after being escorted back to his front yard, Parisek threw him down onto the ground, face first.  *Id*. at 41-42.  Parisek asked Plaintiff where the gun was, cursing at Plaintiff. *Id*.  Plaintiff told him it was in the backyard.  *Id*. at 43.  Parisek then picked Plaintiff up by the handcuffs, snapping his hand. *Id*. Plaintiff started yelling, telling Parisek that he was in pain.  *Id*. Parisek said that he didn't care, and to go get the gun *Id*.  Plaintiff located the gun for Parisek, who then threw him into the back of the police car, despite Plaintiff's protestations that his hand hurt and that he needed to see a doctor *Id.*.   told Plaintiff to tell the police at the station that he needed to see a doctor.  *Id*. Plaintiff told both Parisek and the officers who fingerprinted him at the station that his hand was hurt and he needed a doctor.  *Id*. at 48.  Officers at the station told Plaintiff that he would get medical attention, but he never did.  *Id*.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

-4-

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. V. Catrett*, 477 U.S. 317, 322 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record that demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  The non-moving party must identify specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added).  If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

## III.   DISCUSSION

To prevail on a § 1983 claim, a plaintiff must plead and prove that the defendants did two things: (1) deprived him of a right, privilege, or immunity under the United States Constitution, federal statute, or other federal law; and (2) caused the alleged deprivation while acting under color of state law. *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).

-5-

### A.    Unlawful Arrest

The parties stipulate that dismissal of Plaintiff's unlawful arrest claim is proper, in that Plaintiff pled guilty. Summary judgment will therefore be granted to Defendant on that claim.

### B.    Excessive Force

The Supreme Court has held that an excessive force claim is properly analyzed under  the Fourth Amendment's protection against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394 (1989).  The inquiry is whether the totality of the circumstances indicates that the officer's actions were objectively reasonable. *Id*. at 396. The subjective motivation of the arresting officer is not examined. *Id*. at 397.  In judging whether an officer's actions were reasonable, the court must consider the risk of bodily harm that the officer's actions posed in light of the threat to the public that the officer was trying to eliminate.  *Scott v. Harris*, 550 U.S. 372, 383 (2007).

To hold an individual police officer liable for the use of excessive force in violation of the Fourth Amendment, a plaintiff must show that the officer: "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Binay v. Bennedorf*, 601 F.3d 640 (6th Cir. 2010) (internal quotations and citations omitted).  Additionally, to determine whether an officer's actions were unreasonable in violation of the Fourth Amendment, the court generally considers three factors: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Gaddis v. Redford Township*, 364 F.3d 763, 772 (6th Cir. 2004) (quoting *Graham*, 490 U.S. at 396).  This is a non-exhaustive list, and the

-6-

"'proper application' of the reasonableness inquiry 'requires careful attention to the facts and circumstances of each particular case.'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005) (quoting *Graham*, 490 U.S. at 396). The standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). A court must recognize that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham* at 397.

In this case, drawing all inferences in Plaintiff's favor, there are questions of material fact surrounding Plaintiff's arrest, and whether Defendant Parisek used unreasonable force. Plaintiff alleges that Parisek threw him to the ground face-first, then picked him up by his handcuffs, causing his hand to snap. Plaintiff also states that he complained numerous times on the scene and at the police station that he was in pain and needed medical attention, yet never received it. The claim of injury is corroborated by the medical records from Beaumont Hospital. The Plaintiff's testimony conflicts with that of Parisek, who states that he placed Plaintiff on one knee and then escorted him to the police car, without complaint.

Taking the Plaintiff's evidence as true, a jury could reasonably find that Defendant Parisek used excessive force. While the crime at issue was serious–Plaintiff shot a gun into the air–the other two factors weigh against a finding that Parisek's application of force was reasonable. Plaintiff did not pose an immediate threat to the safety of the officers, nor was he actively trying to resist arrest or flee from the scene. Indeed, Parisek testified at his deposition that once he located Plaintiff in a neighbor's back yard, Plaintiff

-7-

readily complied with his requests regarding handcuffing. Although Defendant asserts that Plaintiff did not answer when asked where the gun was, Plaintiff states that he did not hear Defendant ask him anything until he was thrown to the ground. Defendant argues that Plaintiff ran from the scene, but that was before the police arrived. It is uncontested that once Plaintiff was in contact with the police, he followed orders without resisting or attempting to flee.[1]

Thus, given the conflicting evidence, there is a question of material fact as to whether excessive force was used. Even in light of this conflict, however, the Defendant argues that he is protected by qualified immunity.

Qualified immunity is an affirmative defense. A state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Under *Saucier*, the inquiry was sequential, requiring the district court to first consider whether there was a constitutional violation. However, in *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), the Supreme Court held that the two-step sequential analysis set forth in *Saucier* is no longer mandatory. Rather, *Pearson*

---

[1] Defendant argues that officers who respond to a shots-fired call where the weapon is not located and people remain on the scene cannot be liable on an excessive force theory for pushing an individual and breaking his or her wrist. Defendant cites *Walters v. Stafford,* 317 Fed.Appx. 479, 492 (6th Cir. 2009), stating that this unpublished case is "exactly on point," and that the "same facts are presented." *Defendant's Motion for Summary Judgment* at 11. But it is difficult to discern the similarities beyond the police responding to a shots fired call and a plaintiff's wrist being injured. In *Walters*, the officers had not secured the plaintiff, and the Court noted that one officer testified that she seemed hesitant to get out of the house. In the present case, by contrast, the Plaintiff was already secured in handcuffs, and was either kneeling or lying on the ground when the Defendant is alleged to have applied gratuitous force.

commended the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis.

As discussed above, there is a question of material fact as to whether a constitutional right was violated, that is, whether Officer Parisek's use of force, resulting in injury to the Plaintiff, violated Plaintiff's Fourth Amendment right to be free from excessive force by the police. As to the second prong of the qualified immunity analysis, the Sixth Circuit has held not only that the right to be free from excessive force has been clearly established since at least 1991, but that "excessively forceful handcuffing" is included in this right. *Martin v. Heideman*, 106 F.3d 1308, 1313 (6th Cir. 2001), citing *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993), *superseded by statute on other grounds as recognized by Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 407-408 (6th Cir. 2007). Moreover, at the time the allegedly excessive force was applied in this case, Plaintiff was compliant and under control. "[T]here undoubtedly is a clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others." *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009)(collecting cases). In *Solovy v. Morabito*, 375 Fed.Appx. 521, 527 (6th Cir. 2010), the Court reversed a grant of summary judgment where the plaintiff alleged that, similarly to the present case, an officer pulled him up by the chains of handcuffs in order to get him to stand up. The Court noted that this "was almost guaranteed to cause substantial pain." Further, because there was nothing to suggest that this was an appropriate way to lift a suspect, "lifting [plaintiff] from the ground using his handcuffs would be plainly unreasonable." *Id*.

In this case, taking Plaintiff's proofs as true, he was subdued in handcuffs and lying on the ground when Defendant Parisek pulled him up by the handcuffs, causing

-9-

pain and injury to his wrist requiring medical treatment. There is nothing in the record to indicate that this was a necessary or appropriate way to lift Plaintiff from the ground. Because these facts could permit a rational trier of fact to find that Defendant Parisek violated a clearly established constitutional right, Defendant is not entitled to either qualified immunity or summary judgment on Plaintiff's Fourth Amendment excessive force claim.

### C.    Assault and Battery

Plaintiff also brings a Michigan intentional tort claim against Officer Parisek for assault and battery. The common law tort of assault requires a showing of an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 189 Mich.App. 110, 119, 472 N.W.2d 16 (1991), citing *Tinkler v. Richter*, 295 Mich. 396, 401, 295 N.W. 201 (1940). The tort of battery denotes a "wilful and harmful or offensive touching of another person which results from an act intend to cause such a contact." *Id*.

The court in *VanVorous v. Burmeister*, 262 Mich.App. 467, 483, 687 N.W.2d 132 (2004), noted that "government actors may find it necessary—and are permitted—to act in ways that would, under different circumstances, subject them to liability for an intentional tort. To find for plaintiff on these [assault and battery] claims, our courts would have to determine that the officers' actions were not justified because they were not objectively reasonable under the circumstances." *See also Brewer v. Perrin*, 132 Mich.App. 520, 528, 349 N.W.2d 198 (1984) ("governmental actions which would normally constitute intentional torts are protected by governmental immunity if those

-10-

actions are justified"). As discussed above, there is a clear question of material fact as to whether Officer Parisek's actions were objectively reasonable.

While under Michigan Law, police officers are immune from tort liability when acting within the scope of their position and engaging in a governmental function, Mich. Comp. Laws Ann. 691.1407(2), police officers may nevertheless be liable for torts committed if they engage in gross negligence. Mich. Comp. Laws Ann. 691.1407(2)(c). Where an officer uses excessive force in effectuating an arrest, the officer may be held liable for the intentional tort of assault and battery. *See White v. City of Vasser*, 157 Mich. App. 282, 293, 403 N.W.2d 124 (1984). Under the facts of the present case, Defendant is not entitled to summary judgment on Plaintiff's claim of assault and battery.

## IV. CONCLUSION

For the reasons stated, the Defendant's Motion for Summary Judgment is GRANTED as to the claim of false arrest.

The Motion for Summary Judgment is DENIED as to the Fourth Amendment claim of excessive force and the state law claim of assault and battery.

IT IS SO ORDERED.

Date: September 30, 2012

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 30, 2013, electronically and/or by U.S. mail.

s/Michael Williams
Case Manager to the
Honorable R. Steven Whalen

-11-